IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01263-KAS

WYATT T. HANDY, JR.,

     Plaintiff,

v.

WS BARRICADE CORPORATION,
RON SMITS,
STEPHEN ELIOFF,
AMY PIETERSE, and
KYLE JEROME,

     Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on Defendants' **Motion to Dismiss** [#22] (the "Motion"). Plaintiff filed a Response [#37] and Defendants filed a Reply [#43]. On January 2, 2025, Defendants filed an Amended Reply [#59] along with a Red-Lined Amended Reply [#59-1] showing the changes, which consist of corrections to erroneous factual representations contained in the original Reply [#43]. The Court has reviewed the briefing, the case file, and the applicable law. For the following reasons, the Motion [#22] is **GRANTED**[1] as to Plaintiff's federal causes of action (Claims One through Eight), which are **DISMISSED WITHOUT PREJUDICE**. Having dismissed all claims over which the Court has original jurisdiction, the Court will decline supplemental jurisdiction over

_____

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#30]; *Order of Reference* [#31].

Plaintiff's state law causes of action (Claims Nine through Sixteen), which are **DISMISSED WITHOUT PREJUDICE** to filing in state court. The Court is aware that Plaintiff has moved for leave to amend, *see Motion to Amend* [#72], and will rule on that motion once it is fully briefed.

## I. Background

### A.    Plaintiff's Complaint [#1]

This employment discrimination action arises from Plaintiff's employment with Defendant WS Barricade Corporation ("WSB"). *See Compl.* [#1] at 5, ¶¶ 10-11. Defendant Kyle Jerome ("Jerome") was Plaintiff's field manager. *Id.*, ¶ 18. Defendant Amy Pieterse ("Pieterse") was Defendant WSB's Human Resources Manager and is the daughter of Defendant Ron Smits ("Smits"), Defendant WSB's owner. *Id.*, ¶ 23. Finally, Defendant Stephen Ellioff ("Ellioff") was an operations manager who later became Plaintiff's direct supervisor. *Id.* at 8-9, ¶¶ 65-66.

Plaintiff is an African American male, divorcé, and a single father. *Id.* at 5, ¶ 9. On May 24, 2022, Defendant WSB hired Plaintiff as a traffic control flagger. *Id.*, ¶ 10. About two months later, Plaintiff separated from the mother of his child and began caring for his 6-year-old child on his own. *Id.*, ¶¶ 13-14. For several months thereafter, Plaintiff did not have access to day care services. *Id.*, ¶ 15.

From July 29, 2022, to October 2023, Plaintiff's direct supervisors and his field supervisor, Defendant Jerome, "were aware of Plaintiff's parental responsibilities and agreed to make accommodations with Plaintiff's work schedule, [so] he could deliver his child to and from school[] and not work shifts outside of normal business hours." *Id.*, ¶¶ 18-19. Defendant Jerome "proposed that if Plaintiff obtained child care, he would request

Plaintiff be promoted to a Traffic Control Technician-Apprentice (TCT-A)." *Id.*, ¶ 21. Plaintiff was eventually approved for a childcare assistance program. *Id.* at 5-6, ¶¶ 24-27. After that, Plaintiff was interviewed for the TCT-A position, which he ultimately received. *Id.*, ¶¶ 33-34, 42.

Plaintiff alleges that "there was an agreement" that management would accommodate his parental responsibilities by not scheduling him for shifts outside normal business hours. *Id.*, ¶ 36. Plaintiff was not required to work on-call or night shifts unless it was prearranged. *Id.*, ¶ 37. When Plaintiff received the promotion to TCT-A, Defendant Jerome informed Plaintiff that this accommodation would continue. *Id.*, ¶ 39. A few months later, Plaintiff sought another promotion, but no advancement materialized. *Id.* at 7, ¶¶ 45-48.

Plaintiff alleges that he was held back from further promotions "due to race and sex (family, marital, and parental responsibilities)." *Id.*, ¶ 49. Plaintiff also alleges that out of 50 TCT-A and TCS positions at Defendant WSB, there are only two or three Black TCT-As and there are no Black TCSes. *Id.*, ¶ 50. Around October 2023, Plaintiff "began hearing from reliable sources that Defendant Elioff became aware of Plaintiff's family, marital, and parental status and responsibilities, and was unhappy that he was not being assigned gas jobs, on-call, or nights." *Id.* at 8, ¶ 63. Defendants Elioff and Jerome placed Plaintiff under the direct supervision of Defendant Ellioff and non-party Laci Hill. *Id.*, ¶ 65. Plaintiff alleges that this change was made to force him to regularly work on-call, despite the previously agreed upon accommodations for his family responsibilities. *Id.* at 9, ¶ 67.

On November 11, 2023, Plaintiff emailed Defendant Pieterse to ask about the process for filing an administrative complaint, but he was told that Defendant WSB had

no written policies governing administrative complaints. *Id.*, ¶¶ 69-70. Defendant Pieterse did not respond to Plaintiff's follow-up email in which he reported harassment by management. *Id.*, ¶¶ 71-72. On December 14, 2023, Defendant Elioff praised Plaintiff for his good work performance and asked if Plaintiff had any concerns about the change in management structure. *Id.*, ¶¶ 73-74. Plaintiff raised concerns with "the on-call issue" and Defendant Elioff advised that the management team was in the process of addressing it. *Id.*, ¶¶ 74-76. Plaintiff further alleges that certain White, Hispanic, or female TCS/TCT-As "were unable to work on-call related to pending criminal cases, convicted sex offenders, on probation or parole, or had driving restrictions, or parental status and responsibilities," but Defendants "were not concerned" with those employees' restrictions. *Id.*, ¶¶ 77-78. According to Plaintiff, "none of the women at [WSB] who are single mothers were being forced to work on-call outside of pre arrangements and availability." *Id.* at 10, ¶ 81.

On December 9, 2023, Plaintiff submitted a time-off request for three days because he lacked childcare arrangements for his child's upcoming winter break, but the request was denied. *Id.*, ¶¶ 84-86. Plaintiff resubmitted the request as unpaid time off, but that was also denied. *Id.*, ¶ 88. Defendants Pieterse and Elioff had instructed Plaintiff's field manager to deny the request, which Plaintiff claims was unusual because time-off requests typically fell within the field manager's responsibility. *Id.*, ¶¶ 89-90. Plaintiff submitted the request a third time, as paid time-off, which was approved. *Id.*, ¶ 92.

On December 17, 2023, Plaintiff filed an administrative complaint for race and sex discrimination, equal pay, denial of promotion, and harassment. *Id.*, ¶ 94. At a meeting the next day, Defendant Pieterse found Plaintiff's claims to be meritless. *Id.*, ¶¶ 95-97.

Following that meeting, Defendant Pieterse informed Plaintiff that he would be regularly scheduled to work on-call notwithstanding his parental status. *Id.* at 11, ¶ 102.

On January 7, 2024, Plaintiff submitted another administrative complaint, this time for Defendant Pieterse's decision to deny him holiday pay for Christmas Day 2023 and New Year's Day 2024. *Id.* at 12, ¶ 111. The next day, Defendant Pieterse denied the holiday pay complaint and informed Plaintiff he "ha[d] to work the day before and after a holiday to be paid or provide adequate notice and have it approved ahead of [Plaintiff's] absence." *Id.*, ¶ 113. In response, Plaintiff explained why he believed he was eligible for holiday pay. *Id.*, ¶ 114. Defendant Pieterse did not budge; instead, she pressed Plaintiff to reimburse the company for on-call pay Plaintiff received on two days during which Plaintiff was unable to fulfill his on-call obligations. *Id.*, ¶¶ 115-16.

On January 9, 2024, less than 12 hours after Plaintiff submitted his administrative complaint regarding denied holiday pay, Defendant Smits removed Plaintiff from a American Traffic Safety Services Association (ATSSA) certification class he was taking, terminated Plaintiff, and expressly stated that the termination was due to the holiday pay complaint. *Id.*, ¶¶ 120-22. On February 21, 2024, in proceedings before the Colorado Department of Labor and Employment regarding Plaintiff's request for unemployment benefits, Defendant Pieterse accused Plaintiff of wage theft and contested his eligibility for unemployment benefits; however, an administrative adjudicator found for Plaintiff. *Id.*, ¶¶ 142, 145-149.

Plaintiff raises sixteen separate causes of action: (1) Title VII – race discrimination; (2) Title VII – race-based hostile work environment; (3) Title VII – sex discrimination; (4) Title VII – retaliation; (5) Equal Pay Act – sex-based discrimination; (6) 42 U.S.C. § 1981

– retaliation; (7) 42 U.S.C. § 1981 – race discrimination; (8) 42 U.S.C. § 1981 – failure to train or supervise; (9) Colorado Anti-Discrimination Act ("CADA") – race- and sex-based discrimination; (10) negligence and negligence per se; (11) negligent supervision and training; (12) respondeat superior/vicarious liability; (13) intentional infliction of emotional distress; (14) breach of implied covenant of good faith and fair dealing; (15) breach of contract; and (16) defamation. *Id.* at 4-29.

**B.    EEOC Letter and Charge of Discrimination [#1-1, #1-2]**

Plaintiff attached two documents to his Complaint [#1]: (1) an EEOC Letter [#1-1] dated April 10, 2024, and (2) a Charge of Discrimination [#1-2] digitally signed by Plaintiff on February 13, 2024. The letter indicated that the EEOC issued a Notice of Right to Sue at Plaintiff's request because the EEOC was unlikely to complete its investigation within 180 days from the date Plaintiff's discrimination charge was filed. *EEOC Letter* [#1-1] at 1.

In Plaintiff's Charge of Discrimination [#1-2] he wrote that he was initially denied promotion to a TCT "due to a traffic violation on [his] driving record" but that other employees outside his protected class with the same type of violations, had been promoted. *Charge of Discrimination* [#1-2] at 1. Plaintiff averred that he had successfully performed his duties, and his supervisor refrained from putting him on on-call duty because of his responsibilities as a single parent. *Id.* He believed he had been denied promotions due to his race and parental responsibilities. *Id.* Plaintiff further explained that a supervisor outside his unit complained about this accommodation, and he was reassigned because of purported "family/nepotism rules," even though he is not related to any other employee. *Id.* at 2. Plaintiff also mentioned his filing of an administrative

complaint concerning holiday pay. *Id*. He asserts that he was discharged due to his race and sex, and in retaliation for engaging in protected activities in violation of Title VII. *Id*.

## C.    Motion to Amend [#72]

On November 12, 2024, Plaintiff filed an Amended Complaint [#49] without the Court's leave. On February 16, 2025, the Court struck the Amended Complaint [#49] for noncompliance with Fed. R. Civ. P. 15(a)(2). *See Minute Order* [#70]. On March 12, 2025, Plaintiff filed an opposed Motion for Leave to File Second Amended Complaint [#72]. Because Defendants' response deadline has not yet passed, the Court will rule on the Motion for Leave [#72] after it is fully briefed.

## II. Legal Standard

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then [a] plaintiff[] ha[s] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers

'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citation omitted). The court's function on a Rule 12(b)(6) motion "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014) (quotation omitted).

## III. Analysis

Defendants argue that Plaintiff's Complaint [#1] should be dismissed on five grounds: (1) Plaintiff failed to exhaust administrative remedies as required by both Title VII and CADA, which failure bars Claims One, Two, Three, Four, and Nine; (2) Title VII does not contemplate individual liability, thus precluding Claims One, Two, Three, and Four to the extent they are asserted against employees in their individual capacities; (3) the Equal Pay Act permits liability against *either* an employer or its employees, not both, which thus narrows Claim Five to the extent it is asserted against Defendant WSB *and* the other Defendants; (4) Plaintiff fails to state a plausible claim for relief as to his Claims One through Seven, Nine through Eleven, Thirteen, Fifteen, and Sixteen; and (4) that Plaintiff's Claims Eight, Twelve, and Fourteen are not legally cognizable. *Motion* [#22] at 8-35.

As discussed below, the Court finds that Plaintiff has failed to state federal claims and, therefore, declines supplemental jurisdiction over his state law claims. Thus, it need not decide Defendants' arguments about individual liability, Plaintiff's state law claims, or failure to exhaust. *Cf. Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185-86 (10th Cir. 2018)

(reversing prior precedent and holding that failure to exhaust administrative remedies under Title VII is not a jurisdictional bar but rather an affirmative defense); *see also Hare v. Donahoe*, No. 13-CV-508-JED-FHM, 2014 WL 4793346, at *3 n.2 (N.D. Okla. Sept. 25, 2014) (deeming resolution of the failure-to-exhaust argument unnecessary "because, assuming *arguendo* that [the plaintiff] had fully exhausted her administrative remedies, she does not allege a cognizable claim"), *aff'd*, 608 F. App'x 627 (10th Cir. 2015) ("*Hare II*").

## A.    Title VII and § 1981 (Claims One through Four and Six through Eight)

Plaintiff's Claims One through Four are asserted under Title VII. *Compl.* [#1] ¶¶ 1-195. In short, Title VII prohibits employers from discharging or otherwise discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff's Claims Six through Eight are asserted under 42 U.S.C. § 1981. *Compl.* [#1] ¶¶ 206-27. Pursuant to 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" These rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). By its terms, § 1981 creates four protected interests: "(1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be

subjected to like pains and punishments."[2] *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989).

With respect to discrimination and retaliation, the elements considered on a motion to dismiss such claims asserted under Title VII and § 1981 are the same, and the Court therefore considers these claims simultaneously below. *See, e.g*, *Loud v. Jackson*, No. CIV-21-359-RAW, 2025 WL 755216, at *8 (E.D. Okla. Mar. 10, 2025) (racial discrimination); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (retaliation). Under Fed. R. Civ. P. 12(b)(6), a plaintiff "is not required to set forth a prima facie case for each element [but] [he] is required to set forth plausible claims." *Khalik*, 671 F.3d at 1193. In other words, surviving a motion to dismiss requires more than general

---

[2] The making and enforcement of contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Court has carefully considered the entirety of Plaintiff's Complaint [#1] to determine whether he may be basing any of his § 1981 claims, at least in part, on the making and enforcement of Plaintiff's employment contract (including his general "understanding" of having no on-call duties), made between him and his employer, Defendant WSB. *See, e.g.*, *Cassie v. City & County of Denver*, No. 20-cv-02952-MEH, 2023 WL 5507788, at *26-27 (D. Colo. Aug. 25, 2023) (noting that the plaintiff had couched her discrimination and retaliation claims in the context of § 1981 contractual interference). The Court finds that it is *possible* that Plaintiff may have intended to make such a claim. *See, e.g.*, *Compl.* [#1] ¶ 67 (stating in connection with his *Title VII* race discrimination claim that new management would "force [him] to regularly work on-call, notwithstanding the employment agreement related to his parental responsibilities"). However, the Court finds that even a close, liberal reading of Plaintiff's three § 1981 claims, i.e., Claims Six through Eight, would not put Defendants on fair notice of such a basis underlying his § 1981 claims. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (stating that the Court must liberally construe the filings of a pro se litigant); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (stating that the plaintiff has the burden to "provide fair notice of the grounds for the claims made against each of the defendants"). Rather, Plaintiff's § 1981 claims appear to fall only under the third protected area of this statute, i.e., the right to the full and equal benefit of the laws. The Court may not "construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).Thus, if Plaintiff were intending to assert a § 1981 claim based on the right to make and enforce contracts, he may, if appropriate, clearly assert such a claim in an amended complaint, but the Court does not further consider this type of claim here.

assertions of discrimination and retaliation; rather, the plaintiff must allege facts which raise an inference of discrimination or retaliation. *Id.*

### 1. Claims One, Three, and Seven (Discrimination Based on Race and/or Sex)

Under Claim One, Plaintiff asserts that he was discriminated against on the basis of race in violation of Title VII. *Compl.* [#1] ¶¶ 1-163. Under Claim Three, Plaintiff asserts that he was discriminated against on the basis of sex in violation of Title VII. *Id.* ¶¶ 180-87. Under Claim Seven, Plaintiff asserts that he was discriminated against on the basis of race in violation of § 1981. *Id.* ¶¶ 212-18.

To set forth a prima facie case of discrimination, a plaintiff must show that "(1) [he] is a member of a protected class, (2) [he] suffered an adverse employment action, (3) [he] qualified for the position at issue, and (4) [he] was treated less favorably than others not in the protected class." *Khalik*, 671 F.3d at 1192 (Title VII); *see also Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001) (§ 1981). These prima facie elements "are flexible and are not to be applied rigidly"; however, a plaintiff still "must show that [the] defendant intentionally discriminated against [him]." *Hampton*, 247 F.3d at 1102, 1111.

In addition to overt discrimination, Title VII, but not § 1981, forbids "practices that are fair in form, but discriminatory in operation," often called "disparate impact" discrimination. *Lewis v. City of Chicago*, 560 U.S. 205, 211 (2010); *Aliyev v. Fedex Ground Package Sys., Inc.*, No. 2:12-CV-1079-TC, 2014 WL 1338583, at *7 (D. Utah Apr. 3, 2014) (explaining why disparate impact claims are not cognizable under § 1981). "The first step in raising a disparate-impact claim is to identify the specific employment practice

that allegedly causes the discriminatory impact." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1193 (10th Cir. 2006).

Here, setting aside conclusory allegations, Plaintiff's well-pleaded factual allegations show that:

- WBS hired Plaintiff on May 24, 2022 as a traffic control flagger.

- Plaintiff's managers were willing to accommodate his parental responsibilities by limiting on-call duty and shifts outside normal business hours.

- Plaintiff sought and received a promotion to level I Traffic Control Technician – Apprentice (TCT-A), on Plaintiff's understanding that his accommodations would continue.

- WBS only has two or three Black TCT-As and no Black TCSes.

- In October 2023, Plaintiff inquired about a promotion to a level II TCT-A, a position for which he was qualified.

- Around that time, Plaintiff was placed under Defendant Elioff's direct supervision.

- On November 11, 2023, Plaintiff asked WBS's Human Resources Manager how to file administrative complaints and told her he was being harassed, though she never responded.

- On December 14, 2023, Defendant Elioff spoke to Plaintiff and asked if he had any concerns about the management change. Plaintiff explained that he had concerns with working on-call because of his parental responsibilities.

- Other White, Hispanic, or female TCS/TCT-A employees, including some single mothers, were unable to work on-call for reasons, such as pending criminal cases, sex offense convictions, probation or parole, driving restrictions, or parental responsibilities, but these limitations did not cause Defendants concern, and Defendants did not force single mothers to work on-call irrespective of their availability.

- Plaintiff submitted a time-off request for December 26-29, 2023, three times (once as vacation, once as unpaid time off, and once as paid time off) before

it was approved, so that he could care for his child who would be on winter break.

- On December 17, 2023, Plaintiff submitted a complaint for race and sex discrimination, equal pay, promotion denial, and harassment.

- At a December 20, 2023 meeting, Defendant Pieterse found Plaintiff's claims to be meritless and mentioned two accidental overpayments. At that meeting, she told Plaintiff that going forward he would be regularly scheduled to work on-call despite his parental responsibilities.

- On January 5, 2024, Plaintiff was scheduled to participate in an ATSSA certification training class, which is required by the State of Colorado for TCSes and was scheduled from January 8, 2024, through January 10, 2024.

- On January 7, 2024, Plaintiff filed a third complaint with Defendant Pieterse, this time about holiday pay.

- On January 8, 2024, Defendant Pieterse denied the holiday pay complaint. That day, Plaintiff responded by explaining why he was entitled to holiday pay.

- On January 9, 2024, Defendant Pieterse informed Plaintiff that going forward, "call out[s]" will be treated as unpaid time to ensure equitable treatment among all employees, and she asked Plaintiff to provide a date certain by which he would repay on-call pay he received for two days he was unable to fulfill his on-call duties.

- Also on January 9, Defendant Smits removed Plaintiff from his ATSSA certification class and informed Plaintiff that he was being terminated due to his holiday pay complaint.

- Defendant Smits also stated that Plaintiff "appeared to be disgruntled and unhappy with his job" based on his holiday pay complaint.

*Compl.* [#1] ¶¶ 10, 18-19, 32-37, 45-47, 50, 63-65, 67-69, 71-75, 77-79, 81, 84-86, 88, 92, 94, 97-98, 102, 109-16, 120, 122-23.

Taken as a whole, the well-pleaded allegations in Plaintiff's Complaint [#1] do not raise any inference of racial or sex-based discrimination. Instead, they suggest that Defendant WSB was willing to accommodate Plaintiff's childcare responsibilities for some

time (as part of an informal agreement which may or may not have been legally binding), but, after several months and after Plaintiff's promotion to TCT-A, his new manager Defendant Elioff decided to rescind those accommodations. Even so, and even after Defendant's internal complaint alleging discrimination and harassment, Defendant WSB arranged for Plaintiff to attend ATSSA certification training in January 2024, which certification he would need for the higher TCS position. However, once Plaintiff complained about holiday pay and got into an email back-and-forth with Defendant Pieterse concerning holiday pay, Defendant Smits terminated him.

The Court acknowledges Plaintiff's allegations that other White, Hispanic, or female TCSes and TCT-As, including single mothers, had similar on-call restrictions that Defendant WSB was willing to accommodate. However, these allegations are too threadbare to infer differential treatment of similarly situated employees. First, by Plaintiff's own admission, Defendant WSB accommodated his parental responsibilities for several months, and he does not allege that other employees have been accommodated for longer periods than he was or that they received indefinite accommodations. *Cf. Robbins*, 519 F.3d at 1247 (stating that "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not plausibly stated a claim for relief). Second, Plaintiff does not allege that these other employees were similarly situated, i.e. that they had the same supervisor and were subject to the same performance standards. *Cf. Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005) (describing a similarly situated employee in the Title VII context as "one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline") (internal quotation omitted); *see also Compl.* [#1]

¶ 44 (alleging that Defendant WSB has four different levels of TCT-A and TCS positions with different pay and certification requirements). Therefore, the Complaint [#1] lacks well-pleaded facts to plausibly allege that that Defendant WSB ended accommodations, declined to further promote, and terminated Plaintiff because of his race or sex.

Next, the Court addresses the "disparate impact" component of Claims One and Three. Plaintiff has not identified any specific employment practice or policy with a discriminatory impact based on race or sex. *See Carpenter*, 456 F.3d at 1193 (requiring identification of a specific employment practice). Defendant Pieterse allegedly invoked certain policies (in particular, the holiday pay policy and the attendance policy) in emails discussing Plaintiff's holiday pay complaint, but Plaintiff does not allege that these policies have a discriminatory impact on men or Black employees. To the extent that Plaintiff's disparate impact claim rests on Defendant WSB's on-call policy, he again fails to allege that these policies have a discriminatory impact on men or Black employees. At most, he alleges that these policies were applied unfairly to him, but a sample size of one does not demonstrate disparate impact. *See, e.g.*, *Lawrence v. Bonaventure of Castle Rock*, No. 22-cv-01143-WJM-KLM, 2022 WL 17960556, at *5 (D. Colo. Dec. 27, 2022) (citing *Drake v. City of Fort Collins*, 927 F.2d 1156, 1161 (10th Cir. 1991)) (recommending dismissal of Title VII disparate impact claim where "[t]he only allegation of alleged disparate hiring is the refusal to hire Plaintiff himself"), *report and recommendation adopted*, 2023 WL 6976050 (D. Colo. Oct. 23, 2023).

In sum, Plaintiff has failed to plausibly allege Title VII disparate treatment or disparate impact claims on the basis of race or sex or a § 1981 discrimination claim based on race; therefore, his First, Third, and Seventh Claims are **dismissed without**

**prejudice**. *See, e.g.*, *Khalik*, 671 F.3d at 1194 (affirming dismissal of implausibly pleaded Title VII claims); *Hare II*, 608 F. App'x at 630 (same); *Amarsingh v. Frontier Airlines, Inc.*, No. 23-cv-01875-GPG-KAS, 2024 WL 4523868, at *5-6 (D. Colo. Sept. 24, 2024), *appeal noted*, No. 24-1391 (10th Cir. Oct. 8, 2024).

### 2.      Claim Two (Racially Hostile Work Environment)

Under Claim Two, Plaintiff asserts that he was subject to a hostile work environment based on his race in violation of Title VII. *Compl.* [#1] ¶¶ 164-79.

To state an actionable race-based hostile work environment claim, "a plaintiff must allege: (1) membership in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was due to race; and (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of his employment and created an abusive environment." *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024) (citing *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015)). "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1219 (10th Cir. 2003) (internal quotation marks and citation omitted).

For harassment to rise to the level where it "alter[s] the terms, conditions, or privileges of employment, the complained-of conduct must be both objectively and subjectively offensive." *Young*, 94 F.4th at 1250 (citing *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1365 (10th Cir. 1997); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Thus, in addition to plausibly alleging that he subjectively perceived the employer's

conduct as severe or pervasive, a plaintiff must "show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Young*, 94 F.4th at 1251.

Here, Plaintiff's Complaint [#1] does not allege severe or pervasive harassment and does not identify any racially motivated conduct. He plausibly alleges that his employer accommodated his parental responsibilities for several months before his new supervisor decided to rescind those accommodations; that he complained to Defendant Pieterse about holiday pay; and that Defendant Smits terminated him in front of several other managerial employees based on his holiday pay complaint. The Complaint [#1] does not suggest a racially hostile work environment, even if it might have been disrespectful or uncivil at times. *Cf. Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (observing that a person "could be unconscionably rude and unfair . . . without violating Title VII"). Therefore, Plaintiff's Claim Two is **dismissed without prejudice**. *See, e.g.*, *Hare II*, 608 F. App'x at 631 (affirming dismissal of implausibly pleaded Title VII race-based hostile work environment claim).

### 3.    Claims Four and Six (Retaliation)

Under Claim Four, Plaintiff asserts that he was impermissibly retaliated against in violation of Title VII. *Compl.* [#1] ¶¶ 188-195. Under Claim Six, Plaintiff asserts that he was impermissibly retaliated against in violation of § 1981. *Id.* ¶¶ 206-11.

To set forth a prima facie Title VII or § 1981 retaliation claim, a plaintiff must show (1) that he "engaged in protected opposition to discrimination," (2) "that a reasonable employee would have found the challenged action materially adverse," and (3) "that a

causal connection existed between the protected activity and the materially adverse action." *Khalik*, 671 F.3d at 1193 (citing *Twigg*, 659 F.3d at 998).

Regarding the first element, Plaintiff alleges that he "filed" three complaints with Defendant WSB. First, on or around November 11, 2023, he emailed to complain of harassment by new management, who wanted to "force [him] to regularly work on-call, notwithstanding the employment agreement related to his parental responsibilities." *Compl.* [#1] ¶¶ 67, 70-71. Second, on December 17, 2023, Plaintiff filed an unspecified "administrative complaint for race and sex discrimination, equal pay, promotion denial, and harassment" after his time off request had been twice denied. *Id.* ¶¶ 84-94. Finally, on January 7, 2024, he submitted a complaint about holiday pay to which he was allegedly entitled. *Id.* ¶ 111. Only the second complaint could possibly constitute "protected opposition to discrimination." The other two complaints concerned terms and conditions of employment, with no clear connection to Plaintiff's race or sex.

To allege the second element, an "adverse employment action," a plaintiff must plausibly allege that "the [action] brought about some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). The harm need not be significant, but the harm must concern "an identifiable term or condition of employment." *Id.* at 354-55.[3] Construing his Complaint [#1] liberally, Plaintiff identifies

---

[3] *Muldrow* abrogated prior case law, including from the Tenth Circuit, which required an employment discrimination plaintiff to allege "significant" or "material" harm as part of the "adverse employment action" element. *Cf. Muldrow*, 601 U.S. at 353 n.1 (abrogating *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)), 355-56 (disapproving of *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012)). This represented a sea change in what constitutes an "adverse employment action" in this Circuit. *See, e.g., Staton v. DeJoy*, No. 23-cv-03223-SBP, 2025 WL 42821, at *8 (D. Colo. Jan. 7, 2025) (stating that post-*Muldrow*, adverse employment action "appears to this court to encompass a significantly broader category of actions entitled to

three potentially adverse events: (1) Defendant WSB's abandonment of its alleged agreement that Plaintiff would not be expected to work on-call; (2) Defendant WSB's alleged failure to promote Plaintiff to a TCS position with ATSSA certification; and (3) his January 9, 2024 termination.

However, regarding third element, Plaintiff fails to causally connect any of these three potentially adverse employment actions to his December 17, 2023 discrimination complaint. Regarding the expectation that Plaintiff work on-call despite his parental responsibilities, Plaintiff does not say when this pressure began. The Court can reasonably infer that it was prompted by the shift in his direct supervisors, which occurred sometime between October 2023 and November 11, 2023—more than a month *before* Plaintiff filed the administrative complaint alleging discrimination. *Id.* ¶¶ 63-69 (describing change to Plaintiff's employment and management structure and consequent impact); *see also id.* ¶ 83 ("After the management change Plaintiff showed up to work believing it would be his last day because of the harassment.").

Plaintiff claims that he was "regularly" scheduled to work on-call after the meeting regarding his administrative complaint. *See id.* ¶¶ 94, 95, 100, 107. However, his Complaint [#1] renders unclear how often he was scheduled to work on-call against his wishes even before that meeting. In any case, Plaintiff admits that he had faced pressure

---

be called 'adverse' than previously countenanced by the Tenth Circuit," but noting that the Tenth Circuit has not yet offered guidance on "the application of *Muldrow*'s 'some harm' standard"). However, *Muldrow* plainly requires a plaintiff to allege *some* specific harm. *Muldrow*, 601 U.S. at 354-55 ("To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment."); *see also, e.g.*, *Smith v. McDonough*, No. 20-1321 KK/JFR, 2024 WL 2804428, at *9-10 (D.N.M. May 31, 2024) (district court reviewing its prior order in light of *Muldrow* but finding summary judgment for employer was still warranted where "the challenged conduct is so mild and isolated, a reasonable juror could not conclude that it altered the conditions of [the p]laintiff's employment").

to work on-call and expressed concerns about on-call work for more than a month *before* the alleged protected activity—after all, these concerns about on-call scheduling motivated him to complain about "harassment" in November 2023. *See id.* ¶¶ 69-72. The Court cannot plausibly infer a causal connection between the December 17, 2023 discrimination complaint and pressure from management to work on-call, which began more than a month prior.

Regarding the failure to promote him to TCS, Plaintiff acknowledges that, "[o]n January 5, 2024, two (2) weeks after filing the discrimination complaint, Plaintiff was scheduled to participate in the ATSSA certification training class." *Id.* ¶ 109. Plaintiff alleges that ATSSA certification is required to work as a TCS on Colorado Department of Transportation roads, though he was performing that work without the certification. *Id.* ¶¶ 55-57. Thus, even two weeks after Plaintiff complained of discrimination, Defendant WSB took affirmative steps to facilitate the certification Plaintiff needed for a higher-level TCS role. The Court cannot reasonably infer any causal connection between Plaintiff's protected activity and the alleged failure to promote.

Finally, as for the termination, Plaintiff alleges that it occurred two days after he submitted a holiday pay complaint and after he got into a back-and-forth with Defendant Pieterse over it. *Id.* ¶¶ 111-23. Defendant Smits directly connected the termination to Plaintiff's holiday pay complaint, because he thought Plaintiff "appeared to be disgruntled and unhappy with his job based on the holiday pay complaint." *Id.* ¶¶ 122-23. The proximity of these two events reinforces the inference that this third complaint—not the discrimination complaint filed a month prior—was the event that prompted termination. *Cf. Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004) (reasoning that

temporal proximity demonstrated causation for prima facie retaliation case). The only reasonable inference the Court can draw is that the January 7, 2024 *holiday pay complaint*, rather than the December 17, 2023 discrimination complaint, was the cause of Plaintiff's termination.

In short, even if Defendant's alleged conduct was rude, violated an informal agreement governing on-call duty or holiday pay policies, or even constituted retaliation against Plaintiff's filing a *wage* complaint, the Court finds that its conduct does not constitute impermissible retaliation barred by Title VII or § 1981. Therefore, Plaintiff's Claim Four (Title VII retaliation) and Claim Six (§ 1981 retaliation) are **dismissed without prejudice**. *See, e.g.*, *Amarsingh*, 2024 WL 4523868, at *5-6.

### 4.    Claim Eight (Failure to Train)

Under Claim Eight, Plaintiff asserts a "failure to train or supervise" claim under § 1981. *Compl.* [#1] ¶¶ 219-27. Defendants argue that such a claim is not cognizable because it does not fit into any of the protections set forth in the statute and, moreover, that failure to train claims typically arise under 42 U.S.C. § 1983. *Motion* [#22] at 32-33. Plaintiff offers no substantive response, asserting only that he "has plausibly alleged facts to state a claim for failure to train and supervise under § 1981." *Response* [#37] at 33.

After conducting its own research, the Court could not find any in-circuit case, either published or unpublished, which contemplates an independent, cognizable failure-to-train or supervise claim under 42 U.S.C. § 1981. At most, courts in this circuit have considered a *municipal defendant-employer's* alleged failure to train in the context of a hostile work environment claim or a discrimination- and retaliation-based contractual interference claim in violation of § 1981. *See, e.g.*, *Brazzle v. Washington City*, 977 F.

Supp. 2d 1065, 1084-85 (D. Utah 2013) (considering failure-to-train allegations to determine whether the defendant city "maintained a custom of discriminatory personnel practices"); *Cassie v. City & County of Denver*, No. 20-cv-02952-MEH, 2023 WL 5507788, at *26-27 (D. Colo. Aug. 25, 2023) (finding where a plaintiff presented discrimination and retaliation claims in the context of § 1981 contractual interference that there was no evidence of a failure to train, supervise, or discipline city fire department employees). Neither *Brazzle* nor *Cassie*, though, affirmatively held that a failure-to-train (or a failure to supervise) claim was available under § 1981, and neither cited a case so holding. *Brazzle* merely held that evidence of failure to train employees could help prove the custom requirement of a § 1981 municipal liability claim based on a hostile work environment, not that a failure-to-train claim was independently cognizable. *Cassie* appears to have simply assumed that such a claim was available under § 1981 and then found that such a claim failed on the merits as it simultaneously analyzed the failure-to-train claim under § 1983. Thus, Defendants appear to correctly argue that "courts generally do not recognize a standalone failure to train claim under § 1981[.]" *Reply* [#43] at 13. Of course, Defendant WSB's training, policies, and procedures could be relevant to other claims, but the Court has found no support for the proposition that "failure to train or supervise" is an independent claim under § 1981.

Therefore, Plaintiff's Claim Eight is **dismissed with prejudice** because it is not a cognizable standalone claim under § 1981 and amendment would be futile. *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

**B.     Claim Five (Equal Pay Act)**

Under Claim Five, Plaintiff asserts that his rights under the Equal Pay Act (EPA) have been violated. *Compl.* [#1] ¶¶ 196-205.

Here, the Court first considers whether Plaintiff has voluntarily dismissed this claim. In the Motion [#22], Defendants point out that an EPA claim cannot proceed against both an employer and another employee. *See* [#22] at 15-16 (citing *Salemi v. Colo. Pub. Emps.' Ret. Ass'n*, 176 F. Supp. 3d 1132, 1158 (D. Colo. 2016) (stating that "an employee should assert an EPA claim against *either* the employer *or* the individual supervisor(s), but not both)). In his Response [#37], Plaintiff concedes that he cannot proceed against both and states that he "has no objections to the employer WSB being dismissed from the EPA claim if the Court determines that he can proceed against Defendants[ ] in their individual capacities under the EPA." *See* [#37] at 19. Later in his brief, however, under a heading addressing the EPA, Plaintiff states only that he "has no objections with his EPA claim being dismissed." *Id.* at 30. Thus, Plaintiff's Response [#37] renders unclear whether he intends to dismiss the EPA claim in full or only in part, i.e., to the extent asserted against WSB.

Given the organization of the briefs, it appears likely that Plaintiff's first statement, conceding dismissal of Defendant WSB, was based on Defendants' first EPA-related argument. *See Motion* [#22] at 15-16; *Response* [#37] at 18-19. It then appears likely that Plaintiff's second statement, regarding full dismissal of the claim, was based on Defendants' second EPA-related argument. *See Motion* [#22] at 25-26; *Response* [#37] at 30. The Court also notes that Plaintiff has filed a Proposed Amended Complaint [#72-1] which does not assert any claim under the EPA, further indicating Plaintiff's intent to

fully dismiss his claim here. Nevertheless, because the operative Complaint [#1] contains this claim, and because it is not entirely clear from the briefs whether Plaintiff intended to dismiss this claim in full or only against Defendant WSB, the Court proceeds with the claim here out of an abundance of caution to the extent asserted against the four individual Defendants.[4]

Pursuant to the EPA, wage discrimination is prohibited "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]" 29 U.S.C. § 206(d)(1)). At the motion-to-dismiss stage, to plausibly state a claim under the EPA, a plaintiff must allege that "(1) [he] was performing work which was substantially equal to that of the [female] employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the [female] employees were paid more under such circumstances." *Paffe v. Wise Foods, Inc.*, No. 24-cv-00402-RMR-SBP, 2025 WL 685213, at *2 (D. Colo. Feb. 25, 2025) (internal quotation marks omitted) (quoting *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015)).

Here, Defendants argue that Plaintiff has failed to allege that "employees of the opposite sex (female) were paid more than Plaintiff for performing substantially similar work under similar working condition[s]" and that Plaintiff has not provided allegations "to *specifically* identify any similarly situated female employees, delineate their job functions, and provide a comparison of their pay with his." *Motion* [#22] at 26. The Court agrees. Plaintiff's statements regarding the work performed, conditions of that work, and pay with

---

[4] The Court notes that its substantive analysis of Plaintiff's EPA claim below would equally apply to Defendant WSB.

respect to similarly situated female employees are all conclusory, essentially mirroring the legal language of the EPA. *See, e.g.*, *Compl.* [#1] ¶¶ 196-205. Although he broadly asserts that he endured pay discrimination as a single father, he has not provided adequate allegations to demonstrate any of the elements of this cause of action. *See, e.g.*, *Paffe*, 2025 WL 685213, at *3 (recommending dismissal of the plaintiff's EPA claim because "her pleading is silent concerning the elemental fact about the actual salary differential between herself and [the male employee], if there was such a difference").

Therefore, Plaintiff's Claim Five under the EPA is **dismissed without prejudice**.

## C. Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction[.]" *See also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (applying provision to affirm district court's dismissal of the plaintiff's state law claims).

Here, Plaintiff and Defendants all appear to be Colorado citizens, defeating diversity jurisdiction. *See Compl.* [#1] at 2-3 (listing Colorado addresses for all parties). Having dismissed all the claims arising under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, i.e., race and sex discrimination under CADA (Claim Nine); negligence and negligence per se (Claim Ten); negligent supervision (Claim Eleven); respondeat superior/vicarious liability (Claim Twelve); intentional infliction of emotional distress (Claim Thirteen); breach of good faith and fair dealing (Claim Fourteen); breach of contract (Claim Fifteen); and defamation (Claim Sixteen).

Accordingly, Plaintiff's Claims Nine through Sixteen are **dismissed without prejudice**. *See, e.g.*, *Amarsingh*, 2024 WL 4523868, at *6-7 (declining to exercise supplemental jurisdiction over the plaintiff's state law breach of contract claim after dismissing her insufficiently pleaded 42 U.S.C. § 1981 discrimination claim). **Given Plaintiff's pro se status, the Court advises Plaintiff that its dismissal of these state law claims is not a decision on their merits. The Court takes no position on whether Plaintiff has stated one or more viable claims under state law.**

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#22] is **GRANTED**.

IT IS FURTHER **ORDERED** that Plaintiff's Claims One through Seven are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

IT IS FURTHER **ORDERED** that Plaintiff's Claim Eight is **DISMISSED WITH PREJUDICE** as a "failure to train" claim is not cognizable under 42 U.S.C. § 1981.

IT IS FURTHER **ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's Claims Nine through Sixteen, and those claims are **DISMISSED WITHOUT PREJUDICE**.

Dated: March 31, 2025        BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge