IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01263-KAS

WYATT T. HANDY, JR.,

     Plaintiff,

v.

WS BARRICADE CORPORATION,
RON SMITS,
STEPHEN ELIOFF,
AMY PIETERSE, and
KYLE JEROME,

     Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff's **Opposed Motion for Leave to File Fourth Amended Complaint** [#105] and his corresponding **Unopposed Motion for Service of Process by the United States Marshal** [#106]. Defendants filed an Amended Response [#113] in opposition to Plaintiff's Motion [#105], and Plaintiff filed a Reply [#118]. The parties subsequently filed three separate Notices to clarify for the Court the status of discovery that has been conducted. *See Notices* [#119, #120, #121]. The Court has reviewed the briefing, the case file, and the applicable law. For the following reasons, the Motion [#105] is **DENIED**.[1]

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Signed Consent/Non-Consent form* [#30]; *Order of Reference* [#31].

## I.    Background

### A.    Plaintiff's Original Complaint [#1]

This employment discrimination action arises from Plaintiff's employment with Defendant WS Barricade Corporation ("WSB"). *See Compl.* [#1] at 5, ¶¶ 10-11. As relevant here, Defendant Pieterse was WSB's Human Resources Manager and Defendant Smits was WSB's owner. *Id.,* ¶ 23. Plaintiff, who proceeds pro se[2], identifies himself as an African American male, divorcé, and a single father, who was hired by WSB as a traffic control flagger. *Id.* at 5, ¶¶ 9-10. Plaintiff separated from the mother of his child and began caring for his 6-year-old child on his own. *Id.,* ¶¶ 13-14. For several months thereafter, Plaintiff did not have access to day care services. *Id.,* ¶ 15.

From July 29, 2022, to October 2023, Plaintiff's supervisors "were aware of Plaintiff's parental responsibilities and agreed to make accommodations with Plaintiff's work schedule, [so] he could deliver his child to and from school[] and not work shifts outside of normal business hours." *Id.,* ¶¶ 18-19. Plaintiff was not required to work on-call or night shifts unless it was prearranged. *Id.,* ¶ 37. Plaintiff's supervisor apparently "proposed that if Plaintiff obtained child care, he would request Plaintiff be promoted to a Traffic Control Technician-Apprentice (TCT-A)." *Id.,* ¶ 21. Plaintiff was eventually approved for a childcare assistance program, interviewed for the TCT-A position, and got

---

[2] The Court must liberally construe a pro se litigant's filings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

the job. *Id.* at 5-6, ¶¶ 24-27, 33-34, 42. When Plaintiff received the promotion to TCT-A, his supervisor told him that his scheduling accommodations would continue. *Id.*, ¶ 39.

A few months later, Plaintiff sought another promotion, but no advancement materialized. *Id.* at 7, ¶¶ 45-48. Plaintiff alleged that he was denied further promotions "due to race and sex (family, marital, and parental responsibilities)," noting a general dearth of Black employees holding his position or the position he sought. *Id.*, ¶ 49. He also alleged that a new supervisor, Defendant Elioff, later rescinded the agreement concerning his scheduling accommodations, although similarly situated female single parents were not required to work on-call shifts. *Id.*, ¶¶ 63, 65, 67, 81.

Plaintiff alleged that he filed administrative complaints in November and December 2023 asserting race discrimination, sex discrimination, and harassment by management. *Id.*, ¶¶ 69-72. In January 2024, Plaintiff filed another complaint asserting that he was entitled to holiday pay. *Id.* at 12, ¶ 111. Human Resources Manager Pieterse not only denied the request but also asked Plaintiff to reimburse the company for on-call pay Plaintiff received on two days during which Plaintiff was unable to fulfill his on-call obligations. *Id.*, ¶¶ 113-16. WSB Owner Smits terminated Plaintiff shortly thereafter. *Id.*, ¶¶ 120-22.

Plaintiff raised sixteen causes of action—eight federal law claims and eight state law claims. *Id.* at 4-29. As relevant here, Plaintiff asserted federal law claims for race discrimination, race-based hostile work environment, sex discrimination, retaliation, and violation of the Equal Pay Act. *See Order* [#78] at 5-6.

**B.    Defendants' Motion to Dismiss [#22]**

Defendants filed a Motion to Dismiss [#22], asserting, among other arguments, that Plaintiff's claims were either implausible, not legally cognizable, or both. *Motion* [#22] at 8-35. The undersigned concluded that Plaintiff failed to state any federal claims. Specifically, the Court found that the well-pleaded allegations in Plaintiff's Complaint [#1] did not raise an inference of race or sex-based discrimination. *Order* [#78] at 13-14. Instead, they suggested that Plaintiff's employer was willing to accommodate his childcare responsibilities for some time (as part of an informal agreement which may or may not have been legally binding), but after several months and after Plaintiff's promotion to TCT-A, Defendant Elioff decided to rescind those accommodations. *Id.* The Court further found that Plaintiff's allegations concerning differential treatment, disparate impact, and hostile work environment were threadbare. *Id.* at 14-15, 17. Therefore, the Court dismissed Plaintiff's Title VII and § 1981 race and sex discrimination claims, his hostile work environment claim, and his Equal Pay Act claims without prejudice. *Id.* at 15-17, 23.

The Court also dismissed Plaintiff's retaliation claims without prejudice because Plaintiff failed to plead facts that allowed the Court to infer a causal connection between an adverse employment action and an earlier complaint of discrimination. *Id.* at 19-21. Simply put, Plaintiff failed to allege the type of well-pleaded, non-conclusory facts necessary to state claims for discrimination or retaliation. Having dismissed all federal law claims, the Court declined to exercise supplemental jurisdiction over the state law claims. *Id.* at 25-26.

**C.    Earlier Motions for Leave to Amend**

On November 12, 2024, Plaintiff filed an Amended Complaint [#49] without the Court's leave. The Court struck the Amended Complaint [#49] for noncompliance with Fed. R. Civ. P. 15(a)(2). *See Minute Order* [#70].

On March 12, 2025, Plaintiff filed an opposed Motion for Leave to File Second Amended Complaint [#72]. Defendants filed a Response [#87]. In lieu of filing a Reply, Plaintiff instead filed an opposed Motion for Leave to File Third Amended Complaint [#88], which superseded the earlier Motion for Leave to Amend [#72]. Defendants filed a Response [#92], and with leave of Court, incorporated by reference arguments they made in their earlier Response [#87]. *See Minute Order* [#90]. Plaintiff filed a Reply [#97].

The Court set the Motion [#88] for a hearing. *Minute Orders* [#98, #100].

**D.    The January 13, 2026 Motion Hearing**

At the January 13, 2026 Motion Hearing, the Court pointed out that Plaintiff's proposed Third Amended Complaint still failed to present specific facts that would allow the Court to "connect the dots," or infer, a plausible claim of race or sex discrimination. The Court noted that the proposed Third Amended Complaint did not cure the original Complaint's defects, which were discussed at length in the Court's earlier Order [#78] on the Defendant's Motion to Dismiss [#22].

For example, Plaintiff's allegations of race and sex discrimination were still conclusory and lacking the type of factual enhancement that would transform his claims from theoretical to plausible. Additionally, some of Plaintiff's allegations were inconsistent; his own admissions that he had received a promotion with the company and was scheduled for professional advancement training undermined his conclusory allegation

5

that Black employees were passed over for promotions. The comparators that Plaintiff identified to plead differential treatment were not similarly situated to him. And Plaintiff alleged no facts amounting to circumstances that an objective juror would find severe or pervasive.

With respect to his retaliation claims, Plaintiff complained of several of his employer's actions, but only one (his termination) amounted to an adverse employment action within the meaning of a retaliation claim. Plaintiff stated no facts that would allow the Court to infer that his termination was related to any administrative complaint asserting race or sex discrimination. In other words, Plaintiff still failed to plead facts that would allow the Court to infer a causal connection between an adverse employment action and an earlier complaint of discrimination.

For all these reasons, the Court denied the Motion [#88] without prejudice. After equipping Plaintiff for a *second* time with clear guidance on his pleadings' deficiencies, the Court told Plaintiff that it would allow him *one final opportunity* to plead allegations sufficient to state claims for relief.

### E.    Proposed Fourth Amended Complaint [#105-1]

Plaintiff filed the instant Motion [#105] on February 27, 2026, and attached his proposed Fourth Amended Complaint [#105-1]. In it, he asserts ten causes of action, although he styles his Title VII and 42 U.S.C. § 1981 claims for discrimination and retaliation together. In addition to seven state law claims, he also asserts a retaliation claim pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3). He also seeks to dismiss Stephen Elioff and Kyle Jerome from his lawsuit while adding Altus

6

Traffic Management, LLC, d/b/a AWP Safety, as a party under a successor liability theory. *See Plf.'s Ex. 1, Proposed Fourth Am. Compl.* [#105-1] at 2.

Factually, however, the complaint recites the same basic allegations:

- WBS hired Plaintiff on May 24, 2022 as a traffic control flagger.

- Plaintiff's managers were willing to accommodate his parental responsibilities by limiting on-call duty and shifts outside normal business hours.

- Plaintiff sought and received a promotion to level I Traffic Control Technician (TCT), on Plaintiff's understanding that his accommodations would continue.

- WBS only has two or three Black TCTs and no Black employees certified by the American Traffic Safety Services Association (ATSSA) for a higher TCS position. Instead, the only ATSSA-certified employees in the TCS role were "White and Mexican."

- In October 2023, Plaintiff inquired about a promotion to a level II TCT, a position for which he was qualified.

- Defendants began assigning Plaintiff to on-call jobs in November 2023, in contravention of his understanding that he would not be expected to work outside normal business hours due to his parental responsibilities.

- Around that time, Plaintiff was placed under Stephen Elioff's direct supervision.

- On November 11, 2023, Plaintiff asked WBS's Human Resources Manager, Defendant Pieterse, how to file administrative complaints and told her he was being harassed, though she never responded.

- On December 17, 2023, Plaintiff submitted a complaint to Defendant Pieterse alleging discrimination and harassment.

- On December 19, 2023, another TCT informed Plaintiff that "Defendants discussed terminating his employment related to the discrimination complaint."

- At a December 20, 2023 meeting, Defendant Pieterse found Plaintiff's claims to be meritless and told Plaintiff that he would be required to work on-call.

7

- At the meeting, Defendant Pieterse told Plaintiff that she discovered that, in September and October 2023, he had been paid $500 for on-call assignments that he was not available to work.

- On January 7, 2024, Plaintiff filed a third complaint with Defendant Pieterse concerning holiday pay which he believed he was owed.

- On January 9, 2024, Defendant Pieterse denied the holiday pay complaint.

- The same day, Defendant Smits terminated Plaintiff, stating "it's clear that you are no longer happy with the company and do not want to help the company progress" and "it's best for both parties to separate employment."

*Plf.'s Ex. 1, Proposed Fourth Am. Compl.* [#105-1] ¶¶ 12, 37-38, 45, 50, 56-57, 60-63, 66-67, 73, 81, 85, 87-88, 102, 104-05, 107, 112, 124, 126, 130-32.

## II.    Legal Standard

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* Rule 15 "provide[s] the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within a court's discretion. *Foman*, 371 U.S. at 182.

Denying leave to amend is generally justified only when there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Furthermore, "[w]here the party

8

seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir.1990).

### III.    Analysis

The Court told Plaintiff that it would give him one more opportunity to cure the defects in his pleadings, necessarily implying that the Court would grant his motion if he did so. Therefore, the Court focuses on the failure to cure and futility factors.[3]

Leave to amend may be denied where the litigant fails to cure defects identified by the Court. *See Goode v. Zavodnick*, No. 20-cv-00742-DDD-KLM, 2023 WL 3568126, at *17 (D. Colo. Feb. 17, 2023). "[C]ases are not to be litigated piecemeal," and a court does "not have to address repeated 'improvements' to the complaint." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson*, P.C., 956 F.3d 1228, 1236 (10th Cir. 2020) (citing *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) ("[W]e have upheld the denial of leave to amend when the moving party . . . attempted to present theories of recovery seriatim to the district court.")).

Additionally, "[a]lthough Fed. R. Civ. P. provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile." *Jefferson Cnty. Sch. Dist. v. Moody's Inv.'s Servs.*, 175 F.3d 848, 859 (10th Cir. 1999).

---

[3] However, given the numerous motions for leave to amend and rounds of associated briefing, the Court is becoming increasingly concerned about the undue delay and prejudice factors, and the possibility that Plaintiff is using Rule 15 to make the complaint a moving target. *See Frank*, 3 F.3d at 1365; *Zzap Wellness, LLC v. Am. Bankers Ins. Co. of Fla.*, No. 23-cv-02984-CNS-KAS, 2024 WL 4756288, at *3 (D. Colo. Oct. 10, 2024) (recommending denying amendment where the timing strongly suggested the plaintiff was making the complaint a moving target), *report and recommendation adopted*, 2024 WL 4753722 (D. Colo. Nov. 12, 2024).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id*. "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). In making a futility assessment, the Court must accept as true the allegations in the proposed amended complaint and construe the allegations in the light most favorable to the plaintiff. *Bennett v. Wells Fargo Home Mortg.*, No. 16-cv-03185-CMA-KLM, 2017 WL 4675524, at *1 (D. Colo. Oct. 18, 2017). Ambiguities must be resolved in favor of the plaintiff, and the plaintiff must be given "the benefit of every reasonable inference drawn from the well-pleaded facts and allegations." *Id.* (internal quotation marks and citation omitted).

Here, the failure to cure and futility factors go together because the Court has advised Plaintiff twice—once in writing and once during a hearing—of the defects that subject his complaint to dismissal. The Court then gave Plaintiff one more opportunity to cure those deficiencies by pleading facts that would allow the Court to infer that discrimination and retaliation occurred. The Court finds that leave to amend is not appropriate because the proposed Fourth Amended Complaint does not adequately address the Court's concerns.

### Title VII and § 1981

Title VII prohibits employers from discharging or otherwise discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Pursuant to 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to

make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" The elements of discrimination and retaliation claims asserted under Title VII and § 1981 are the same, so the Court considers these claims simultaneously. *See, e.g, Loud v. Jackson*, No. CIV-21-359-RAW, 2025 WL 755216, at *8 (E.D. Okla. Mar. 10, 2025) (racial discrimination); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (retaliation).

### 1. Discrimination Based on Race and/or Sex

To set forth a prima facie case of discrimination, a plaintiff must show that "(1) [he] is a member of a protected class, (2) [he] suffered an adverse employment action, (3) [he] qualified for the position at issue, and (4) [he] was treated less favorably than others not in the protected class." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (Title VII); *see also Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001) (§ 1981). These prima facie elements "are flexible and are not to be applied rigidly"; however, a plaintiff still "must show that [the] defendant intentionally discriminated against [him]." *Hampton*, 247 F.3d at 1102, 1111.

In addition to overt discrimination, Title VII forbids "practices that are fair in form, but discriminatory in operation," often called "disparate impact" discrimination. *Lewis v. City of Chicago*, 560 U.S. 205, 211 (2010); *Aliyev v. Fedex Ground Package Sys., Inc.*, No. 2:12-CV-1079-TC, 2014 WL 1338583, at *7 (D. Utah Apr. 3, 2014) (explaining why disparate impact claims are not cognizable under § 1981). "The first step in raising a disparate-impact claim is to identify the specific employment practice that allegedly causes the discriminatory impact." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1193 (10th Cir. 2006).

11

Setting aside the conclusory allegations, the proposed Fourth Amended Complaint's well-pleaded allegations continue to demonstrate that Defendant WSB was willing to accommodate Plaintiff's childcare responsibilities for some time but later rescinded those accommodations. Plaintiff complained to Human Resources about discrimination and harassment, but the complaint was determined to be unfounded. Plaintiff was later terminated after complaining about a failure to receive holiday pay. Plaintiff does not, however, plead facts showing that Defendants intentionally discriminated against him *because of his race or sex* or that he was treated less favorably than others not in the protected class. The proposed Fourth Amended Complaint continues to omit facts that could allow the Court to infer discriminatory intent on the basis of race or sex. Although Plaintiff argues that his proposed Fourth Amended Complaint [#105-1] includes "a chronological sequence of events linking Plaintiff's protected status to adverse treatment," *see Reply* [#118] at 5, the Court cannot identify any such linkage on the face of the proposed Fourth Amended Complaint.

Plaintiff yet again asserts that "White and Mexican TCT's were getting promoted" and that African-American employees were "held back or terminated," but he does not identify similarly situated comparators. *Cf. Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005) (describing a similarly situated employee in the Title VII context as "one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline") (internal quotation omitted). Take, for example, Plaintiff's allegation that "the White and Mexican TCT's were getting promoted from level I TCT to level II TCT when they met the requirements." *Plf.'s Ex. 1, Proposed Fourth Am. Compl.* [#105-1] ¶ 66. Notably, Plaintiff continues to allege that "[e]very time an African-

12

American TCT *came close* to meeting the criteria to become a ATSSA certified TCS, to include Plaintiff, Damian Mosley, and several other African-American employees, they would be held back or terminated." *Id.* ¶ 69 (emphasis added). The Court explained to Plaintiff during the January 13, 2026 Motion Hearing that this allegation did not pass muster because the other Black employees were not *similarly situated* to the White and Mexican employees, who had, by Plaintiff's own admission "met the requirements." Having already brought this shortcoming to Plaintiff's attention at least once before and seeing the same deficient allegation again in the proposed Fourth Amended Complaint, the Court is increasingly unpersuaded that further amendment would result in plausibly alleged claims for relief.

With respect to the "disparate impact" theory, Plaintiff still fails to identify a specific employment practice or policy with a discriminatory impact based on race or sex. *See Carpenter*, 456 F.3d at 1193 (requiring identification of a specific employment practice). As with his earlier Complaints, Plaintiff fails to connect the dots between an employment policy—such as the holiday pay policy, the on-call policy, or the attendance policy—and its discriminatory impact on men or Black employees at large.

Because Plaintiff's discrimination claims remain subject to dismissal after several rounds of amendment, the Court concludes that further amendment would be futile. *See Khalik*, 671 F.3d at 1194 (affirming dismissal of implausibly pleaded Title VII claims); *Jefferson Cnty. Sch. Dist.*, 175 F.3d at 859 (granting leave to amend is not required where the amended claims are subject to dismissal).

**2.    Retaliation**

To set forth a prima facie Title VII or § 1981 retaliation claim, a plaintiff must show (1) that he "engaged in protected opposition to discrimination," (2) that he suffered an

13

employment action "that a reasonable employee would have found . . . materially adverse," and (3) "that a causal connection existed between the protected activity and the materially adverse action." *Khalik*, 671 F.3d at 1193 (citing *Twigg*, 659 F.3d at 998). To allege an "adverse employment action," a plaintiff must plausibly allege that "the [action] brought about some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). The harm need not be significant, but the harm must concern "an identifiable term or condition of employment." *Id.* at 354-55.

Regarding the first element, Plaintiff alleges that he engaged in protected opposition to discrimination when, on December 17, 2023, he filed a complaint for discrimination and harassment with human resources. *Plf.'s Ex. 1, Proposed Fourth Am. Compl.* [#105-1] ¶ 157.

Regarding the second element, Plaintiff alleges that "Defendants adversely changed his work schedule by forcing him to work on-call[.]" *Id.* ¶ 158. Plaintiff also identifies the "wage theft accusation," denial of holiday pay, and his termination as adverse actions. *Id.*

However, regarding third element, Plaintiff still fails to causally connect any of these claimed adverse employment actions to his December 17, 2023 discrimination complaint. Although Plaintiff alleges that "temporal proximity" provides the causal bridge, the timing only gets Plaintiff so far. For example, Plaintiff's own Complaint shows that he was required to start working on-call shifts *before* he submitted his discrimination complaint. *Id.* ¶¶ 71, 73. The Court cannot plausibly infer a causal connection between

the December 17, 2023 discrimination complaint and a change in his work schedule that began more than a month earlier.

As for Plaintiff's termination, the causal link of temporal proximity between the discrimination complaint and the termination is severed by Plaintiff's allegations that he submitted a holiday pay complaint with Defendant Pieterse and was terminated not two days later. The proximity of *these* two events reinforces the inference that this third complaint to HR—not the discrimination complaint filed a month prior—was the event that prompted termination. *Twigg*, 659 F.3d at 1001-02 ("[E]vidence of temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action."). True, Plaintiff's proposed Fourth Amended Complaint includes a novel allegation that "Defendants discussed terminating his employment related to the discrimination complaint" shortly after the complaint was lodged. However, Plaintiff provides no further factual enhancement concerning this alleged conversation— including whether any participants actually decided to terminate Plaintiff or whether Defendant Smits (who later terminated Plaintiff) participated. The Court further concludes that this threadbare allegation is undermined by the fact that Defendant enrolled Plaintiff in professional development training necessary for further promotion *after* his discrimination complaint. The inconsistency renders this vague allegation implausible.

Finally, as for Defendant Pieterse's request that Plaintiff return erroneously issued pay for unworked shifts and the denial of holiday pay, to the extent that these actions are adverse employment actions at all, Plaintiff only asserts in a conclusory fashion that the

15

actions were motivated by retaliatory animus. He alleges no well-pleaded factual material to allow the Court to infer that such conclusions are plausible.

Because Plaintiff's Title VII and § 1981 retaliation claims remain subject to dismissal, the Court concludes that further amendment would be futile. *See Khalik*, 671 F.3d at 1194; *Jefferson Cnty. Sch. Dist.*, 175 F.3d at 859.

With respect to Plaintiff's FLSA retaliation theory, the Court concludes that even if Plaintiff clearly established that Defendant's holiday pay arrangement fell within the FLSA's purview such that Plaintiff was entitled to its protections, Plaintiff's addition of a new legal theory not contemplated in any earlier version of the complaint, at this stage in the proceedings, exceeded the bounds of the Court's leave to amend the Third Amended Complaint. Plaintiff had all the requisite information concerning his FLSA retaliation theory from the inception of this case and failed to raise it earlier. *Zzap Wellness, LLC,* 2024 WL 4756288, at *3 ("Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint 'a moving target,' [or] to 'salvage a lost case by untimely suggestion of new theories of recovery[.]'").

Plaintiff has failed to cure the defects that the Court previously identified in order to state any federal claim for relief. Therefore, the Court declines to assess the merits of his state law or successor liability claims and concludes that amendment would be futile.

## IV.    Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#105] is **DENIED**.

IT IS FURTHER **ORDERED** that the Motion [#106] is **DENIED** as moot.

16

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in Defendants' favor and terminate this case.

Dated: June 18, 2026                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge